# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
City and County of San Francisco, Michael Bushnell, Steven Domecus, Wallace H. Kresley, Paul McIntosh, Brett Montague, Matthew Parra, and Does #1 to #10.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Douglas F. Carlson and Maya Zubkovskaya

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* 400 McAllister Street Room 103, San Francisco CA 94102

**CASE NUMBER:** *(Número del Caso):*
CGC -21-590135

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Douglas F. Carlson and Maya Zubkovskaya, PO Box 191711, San Francisco CA 94119-1711  415-956-9567

DATE:
*(Fecha)* March 15, 2021

Clerk, by
*(Secretario)* ROWMAN LIU

, Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED: You are served**
1. [x] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1
2
3
4
5
6
7
8
9
10
11

DOUGLAS F. CARLSON
MAYA ZUBKOVSKAYA
PO Box 191711
San Francisco CA 94119-1711
(415) 956-9567
doug.carlson@sbcglobal.net
*Pro se*

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAR 15 2021

CLERK OF THE COURT
BY: ___BOWMAN LIU___
Deputy Clerk

12
13

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

DOUGLAS F. CARLSON,
MAYA ZUBKOVSKAYA
               Plaintiffs

     v.

CITY AND COUNTY OF SAN
FRANCISCO,
MICHAEL BUSHNELL,
STEVEN DOMECUS,
WALLACE H. KRESLEY,
PAUL MCINTOSH,
BRETT MONTAGUE,
MATTHEW PARRA,
DOES #1 –10
             Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action,   CGC -21-590135
File No. _____

COMPLAINT FOR DAMAGES
FOR TORTS AND VIOLATIONS OF
CIVIL RIGHTS

31

**SUMMARY**

32

    1.   This complaint seeks damages for several claims and injuries resulting from an incident in

33

which defendants detained and transported plaintiff Zubkovskaya to a hospital without probable

cause after receiving a mental health distress report from a third party. Defendants poorly managed the incident, and three defendants admitted on body-worn camera that they did not have probable cause to enter plaintiffs' home. Nonetheless, shortly after defendant supervisors arrived on scene, they directed and otherwise oversaw an illegal search and an illegal seizure and used excessive force, resulting in physical and emotional injuries to plaintiff Zubkovskaya and emotional injuries to plaintiff Carlson.

**PARTIES**

2.     Plaintiffs are Maya Zubkovskaya and Douglas F. Carlson. Plaintiffs reside at 550 Battery Street, Apartment 1817, in San Francisco.

3.     Defendants are City and County of San Francisco, Michael Bushnell, Steven Domecus, Wallace H. Kresley, Paul McIntosh, Brett Montague, Matthew Parra, and Does #1 to #10.

4.     Defendants Bushnell (#2290), Domecus (#1237), Kresley (#1826), McIntosh (#2168), Montague (#11), and Parra (#981) ("Officers") are employed as police officers by the San Francisco Police Department (SFPD) and were employed as SFPD officers on February 14, 2020. Defendant Officers are named in this complaint in their personal and individual capacity. Defendant Officers' badge numbers appear in parentheses next to their names.

5.     Defendant CCSF is a city in the state of California that owns, operates, manages, directs, and controls the SFPD.

6.     Defendant Does #1 to #10 are persons employed by defendant CCSF who bear liability to plaintiffs for the tortious and negligent acts complained of herein whose true names and identities are presently unknown and are therefore sued herein under these fictitious names. Plaintiffs will seek to substitute their true names for their fictitious names if and when their true names are ascertained.

7.     In this complaint, "defendants" includes defendant Officers, defendant CCSF, and defendant Does #1 to #10.

8.     At all times during the incident described herein, defendant Officers and Does #1 to #10 were acting within the scope of their employment.

9. At all times during the incident described herein, defendant Officers and Does #1 to #10 were acting under the color of state law.

**VENUE AND JURISDICTION**

10. San Francisco County is the proper venue because the events at issue in this complaint occurred in San Francisco, California.

11. This court has jurisdiction over the matters described herein.

**FACTUAL ALLEGATIONS**

12. From December 2018 to February 2020, plaintiffs underwent voluntary treatment for a non-life-threatening medical condition at a licensed medical clinic in Colorado. In the morning on February 14, 2020, Sarah McLeod, a nurse at the clinic, informed plaintiff Carlson by telephone that the treatment had failed.

13. Plaintiff Carlson informed plaintiff Zubkovskaya of this news by telephone and proceeded to plaintiffs' residence in the late morning on February 14, 2020. After plaintiffs discussed the news, plaintiff Carlson departed around noon to his office at the Parnassus campus of the University of California, San Francisco.

14. In the 2 PM hour on February 14, 2020, Angie Fouts-Hyatt, whom the clinic presents as a licensed professional counselor, called plaintiff Zubkovskaya. Plaintiff Zubkovskaya repeatedly told Ms. Fouts-Hyatt that she did not want to talk and ended the call after a short conversation.

15. Ms. Fouts-Hyatt called plaintiff Zubkovskaya again after 3:00 PM on February 14, 2020, and insisted that plaintiff Zubkovskaya talk to her. Ms. Fouts-Hyatt began discussing subjects from plaintiff Zubkovskaya's medical past that Ms. Fouts-Hyatt should have known were extremely difficult and sensitive subjects. Ms. Fouts-Hyatt's questions and conversation caused plaintiff Zubkovskaya distress.

16. At 3:33 PM on February 14, 2020, defendant CCSF received a call from Ms. McLeod informing the police dispatcher that plaintiff Zubkovskaya allegedly said that she "wanted to die" and "had a plan." Ms. McLeod did not inform the dispatcher that plaintiff Zubkovskaya also had told Ms. Fouts-Hyatt information that any competent counselor would have understood indicated

1  that Ms. Zubkovskaya had no intention of carrying out her "plan" on any day in the foreseeable

2  future.

3      17.  Defendant CCSF dispatched defendants Kresley, McIntosh, Domecus, and Montague to

4  plaintiffs' residence.  Defendants Kresley, McIntosh, Domecus, and Montague arrived in the

5  common-area hallway outside plaintiffs' apartment door at the same time.  All four officers were

6  present when defendant Kresley knocked on plaintiff Zubkovskaya's door at 3:46 PM.

7      18.  Plaintiff Zubkovskaya declined defendant Officers' request to open the door until 4:09

8  PM.

9      19.  During the 23 minutes when plaintiff Zubkovskaya did not open the door, defendants

10  repeatedly knocked on the door and rang the doorbell that was built into the door.  During this

11  time period, defendants and plaintiff Zubkovskaya communicated through the door.  Plaintiff

12  Zubkovskaya answered most questions that the officers asked her, and she answered all

13  questions material or relevant to her mental health, mental state, any mental health disorder, the

14  historical course of any mental health disorder, whether she was a danger to herself or others,

15  whether she was in danger of imminent harm, and whether probable caused existed to take her

16  into custody pursuant to section 5150 of the California Welfare and Institutions Code.

17      20.  At 3:50 PM, defendant McIntosh asked plaintiff Zubkovskaya, "Do you feel like

18  hurting yourself?"  Plaintiff Zubkovskaya replied, "No."

19      21.  At 3:51 PM, defendant McIntosh asked plaintiff Zubkovskaya, "Why are you upset?"

20  Plaintiff Zubkovskaya responded, "I'm upset" and "I don't want to talk about it."

21      22.  At 3:51 PM, defendant McIntosh asked plaintiff Zubkovskaya, "Do you want to go talk

22  to a doctor?"  Plaintiff Zubkovskaya answered, "Yes, I will talk to a doctor.  I will — just go

23  away — leave me alone."

24      23.  At 3:51 PM, defendant McIntosh stated, "We could bring you to a doctor."  Plaintiff

25  Zubkovskaya responded, "No, you're not going to bring me to a doctor."

26      24.  At 3:51 PM, a neighbor exited his partner's apartment, appeared in the hallway,

27  observed the activity, and entered his own apartment.

28      25.  At 3:51 PM, plaintiff Zubkovskaya stated, "Why are you making such a shame on me?

29  There's neighbors around.  Just go away.  Good God."

26.   At 3:51 PM, defendant McIntosh falsely stated, "Right now, all I can hear is the dog next door."

27.   Plaintiff Zubkovskaya verbalized a concern about shame several times during the encounter with defendants on February 14, 2020.

28.   At 3:56 PM, plaintiff Zubkovskaya stated, "You're making a shame on me.  Making a horrible scene.  That I am going to be ashamed for the years.  Just — just — go away.  I'm fine.  You know, I'm perfectly fine.  I'm fine.  Just go away."

29.   Persons in danger, imminent or otherwise, of harming themselves are not concerned about their reputation or being ashamed for "years."

30.   At 3:56 PM, defendant Domecus suggested to defendant Kresley that they should wait for defendant Bushnell.

31.   At 3:57 PM, defendant Domecus stated to defendant Kresley that there was "no reason to kick in the door."  Defendant Domecus added, "We know she is alive."

32.   At 3:57 PM, defendants Domecus and Kresley agreed that the situation would be different if they knew that plaintiff Zubkovskaya was harming herself.

33.   At 3:57 PM, defendant Domecus expressed a concern to defendant Kresley that defendants would create the exigency if they entered without plaintiff Zubkovskaya's consent.

34.   At 3:57 PM, defendant Kresley stated to defendant Domecus that they do not have a search warrant.

35.   At 3:57 PM, plaintiff Zubkovskaya informed defendant Montague that her husband would be coming home from work "very soon."

36.   At 3:57 PM, defendant Domecus stated that defendants had no obligation to act if no one else was in the home.  At 3:58 PM, defendant Domecus recalled that the reporting party stated that no one else was in plaintiffs' apartment.

37.   At 3:59 PM, defendant McIntosh informed defendants Domecus and Kresley that "the nurse called the husband and asked him to come home."

38.   At 4:00 PM, defendant Domecus stated to defendant McIntosh, "I was just talking to Kresley.  So, if she wants to stay in the house, we have no obligation to go in and stop her from doing that."  Defendant Domecus expressed concern to defendant McIntosh that if they kicked in the door,

they would create the exigency. Defendant McIntosh replied, "We create the exigency" and "I know that." Defendant Domecus added, "If we just sit out here for a while, and the sergeant can just say, 'It's really up to her at that point. So there's no reason to go in.'"

39. At 4:03 PM, in a telephone call with defendant Kresley, plaintiff Carlson informed defendant Kresley that plaintiff Zubkovskaya was upset about bad news received earlier that day and was not in danger, and police involvement and involuntary transport to a hospital would worsen, not help, her condition. Defendant Kresley informed plaintiff Carlson that "we certainly don't want to escalate – that's not why we're here – we're trying to keep everything low key and quiet, you know, for privacy reasons and just — just — in general, because we don't want to make anything worse with Maya. So, I'm just trying to figure out the best way to do that."

40. Defendants Bushnell and Parra arrived in the hallway outside plaintiffs' apartment at 4:03 PM. Defendant McIntosh briefed defendants Bushnell and Parra as follows: "So, I talked to the clinician that she called. Basically she got some bad news today. So they called to check on her and she said, you know, 'I — I don't want to be alive. I'm not going to live past today.' She said, 'Do you have a plan?' She said, 'Yes, I have a plan.'" Defendant Bushnell asked what plaintiff Zubkovskaya's plan was. Defendant McIntosh replied, "She never gave a plan."

41. At 4:04 PM, defendant Kresley informed plaintiff Carlson by telephone that defendant Bushnell had arrived on scene. Defendant Kresley told plaintiff Carlson, "Why don't you just stay put for now, and be by the phone, and let me see what he says and what he is comfortable with?"

42. At 4:04 PM, defendant Kresley told defendant Parra that plaintiff Carlson said that "she is not under any medication right now" and that "he doesn't really like us being here because he says it is going to escalate her issues." On the question of whether plaintiff Carlson could come home, defendant Kresley reported to defendant Parra that defendant Kresley told plaintiff Carlson to "stay put for now and see what you guys want to do."

43. At 4:05 PM, defendant Parra informed defendant Bushnell that plaintiff Carlson "is UC," is "45 minutes out," is "not a huge fan of us being here," and is "kind of on the fence about whether he is going to come."

44. At 4:05 PM, plaintiff Zubkovskaya informed defendant Bushnell that she did not want to open the door. Defendant Bushnell replied, "We just want to make sure you're okay, and then we can leave." Plaintiff Zubkovskaya told defendant Bushnell again that she did not want to open the door.

45. At 4:06 PM, defendant Bushnell replied, "Yeah, but, so, just, per the law and per our policy, we literally cannot walk away until we visually see you." Plaintiff Zubkovskaya responded, "Yeah, and then you're going to stick your — your — your leg into the door and just slam into the apartment." Defendant Bushnell informed plaintiff Zubkovskaya, "No, we wouldn't do that." Plaintiff Zubkovskaya asked, "And what are you going to do?" Defendant Bushnell answered, "I would just want you to open the door so we don't have to do any of that." Plaintiff Zubkovskaya asked, "What are you going to do after I open the door?" Defendant Bushnell responded, "We just want to make visibly make sure you are not harmed or anything like that, and then we can go."

46. At 4:08 PM, during a telephone call between defendant Kresley and plaintiff Carlson, defendant Kresley told plaintiff Carlson, "We're just — like I said — we're just trying to evaluate her as much as we can through the door since she is not opening the door and if she meets – if she satisfies everything – we'll leave her alone." Defendant McIntosh told defendant Kresley to "ask him [plaintiff Carlson] to call her and tell her to open the door" and to assure one or both plaintiffs that "We're not going to go in there." Officer Kresley said to plaintiff Carlson, "We won't go in the place, but we would like to just see her to make sure she is okay. Can you call her and ask her to open the door?" Plaintiff Carlson agreed but informed defendant Kresley that plaintiffs did not consent to defendant Officers' entry or to plaintiff Zubkovskaya's involuntary transfer to a hospital. Defendant Kresley replied, "Right. Exactly. No. That's not – that's exactly, that's not why we are here. We're just trying to see her and evaluate her and make sure she hasn't done anything rash or hurt herself in any way."

47. Plaintiff Carlson immediately called plaintiff Zubkovskaya. He advised her to open the door and assured her that defendants would not enter.

48. At 4:08 PM, defendant McIntosh discussed plaintiff Zubkovskaya's specific and intimate medical condition in a loud voice in front of the apartment door of the neighbor who defendant

1   Officers knew was at home in that apartment.  Defendants discussed plaintiff Zubkovskaya's
2   medical condition out loud in the hallway again at 4:24 PM.
3       49.   At 4:09 PM, defendant Kresley reported to defendant Parra on a telephone conversation
4   with plaintiff Carlson and stated that defendant Kresley did not ask plaintiff Carlson to come
5   home.
6       50.   At 4:09 PM, plaintiff Zubkovskaya opened the door without consenting to defendant's
7   entry.  Defendant Bushnell asked, "What's going on today?"  Plaintiff Zubkovskaya responded,
8   "I don't want to talk about it."  At this time, plaintiff Zubkovskaya was on the telephone with
9   plaintiff Carlson.  Standing in the hallway, defendant McIntosh informed plaintiff Zubkovskaya
10  that defendants did not intend to enter.  Seconds later, defendant Bushnell entered and put his
11  hands on plaintiff Zubkovskaya without her consent.  Plaintiff Zubkovskaya protested to
12  defendant Bushell and to plaintiff Carlson on the telephone.  Defendant McIntosh also entered
13  plaintiffs' apartment.
14      51.   At 4:10 PM, defendant Bushnell visibly directed other defendant Officers to place
15  plaintiff Zubkovskaya in handcuffs.  SFPD General Order 5.01, section I.B states,
16  "Communication with non-compliant subjects is often most effective when officers establish
17  rapport, use the proper voice intonation, ask questions and provide advice to defuse conflict and
18  achieve voluntary compliance before resorting to force options."  By the time that defendant
19  Bushnell directed other defendant Officers to place plaintiff Zubkovskaya in handcuffs, and by
20  the time that defendants Bushnell, McIntosh, and Domecus placed plaintiff Zubkovskaya in
21  handcuffs, defendant Officers had not given any commands to plaintiff Zubkovskaya that she
22  had not obeyed, nor had they given her an option to comply voluntarily before they resorted to
23  force.  Defendants violated General Order 5.01, section I.B.
24      52.   Defendant's entry into plaintiffs' apartment without their consent violated SFPD
25  General Order 5.01, section I.C.  This section provides, "Officers shall, when feasible, employ
26  de-escalation techniques to decrease the likelihood of the need to use force during an incident
27  and to increase the likelihood of voluntary compliance."  Defendants' entry without consent,
28  after having secured plaintiffs' cooperation to open the door with a promise not to enter,
29  escalated the situation and was not a de-escalation technique.  When defendant Bushnell put his

1    hands on plaintiff Zubkovskaya without her consent, he escalated the situation.  Defendant Bushnell

2    and defendant McIntosh did not attempt a de-escalation technique before entering plaintiffs'

3    apartment.  De-escalation techniques were feasible, as plaintiffs' mutual cooperation with defendant

4    Kresley demonstrated when the three parties struck an agreement to open the door.  A reasonable

5    police officer would have understood that de-escalation techniques remained feasible prior to the use

6    of any force, including touching plaintiff Zubkovskaya.

7        53.   General Order 5.01, section III.B provides that officers "must strive to use the minimal

8    amount of force necessary."  Defendant Officers violated this section by resorting to force before the

9    use of force was necessary.  Defendant Officers do not know that the use of force would not have

10   been necessary if defendants had requested voluntary compliance because they did not ask or

11   provide plaintiff Zubkovskaya an opportunity to comply voluntarily.

12       54.   General Order 5.01, section III.B.2.h specifies that a factor in evaluating the use of force is

13   whether the officers warned the subject prior to using force.  Defendant Officers did not warn

14   plaintiff Zubkovskaya before using force.  In fact, approximately two minutes before entering

15   plaintiff Zubkovskaya's home, defendant Officers promised not to enter plaintiff Zubkovskaya's

16   home.

17       55.   General Order 5.01, section III.B.2.i specifies that a factor in evaluating the use of force is

18   "[w]hether there was any assessment by the officer of the subject's ability to cease resistance and/or

19   comply with the officer's commands[.]"  Plaintiff Zubkovskaya complied with all commands.

20       56.   Plaintiff Zubkovskaya did not resist any commands.  In the alternative, without admitting

21   that she resisted in any way, if she initially resisted the use of force to her left arm, she did so

22   without having received any request for compliance or explanation for the use of force, and she

23   correctly exclaimed that the officer had "no right" to use force.

24       57.   While restraining and handcuffing plaintiff Zubkovskaya, defendants Bushnell, McIntosh,

25   and Domecus twisted plaintiff Zubkovskaya's arms behind her back and forced plaintiff

26   Zubkovskaya to the floor, causing pain and injuring her left ankle.  Plaintiff Zubkovskaya has

27   incurred medical expenses and continues to experience pain, swelling, and stiffness that interferes

28   with her walking and her enjoyment of life, and she wears a boot to reduce her pain.

58.    Defendant Officers applied so much force that plaintiff Zubkovskaya cried in pain for several minutes from handcuffs and physical force from defendant Officers.  Plaintiff Zubkovskaya continued to cry from this pain at the hospital.

59.    General Order 5.21, section I states, "The goal of this order is to safely resolve person in crisis incidents without the use of force, whenever possible[.]"  By forcefully taking plaintiff Zubkovskaya into custody within two minutes after she opened the door, after having asked her only one question and despite not having given her a single command, defendant Officers violated General Order 5.21, section I.

60.    Defendant Officers violated General Order 5.21, section I by failing to seek and obtain assistance at the scene from plaintiff Zubkovskaya's husband and by directing him not to come home when defendant Officers knew, based on repeated statements from plaintiff Zubkovskaya, that plaintiff Zubkovskaya wanted her husband's presence and assistance.

61.    At 4:11 PM, defendant Bushnell declared to plaintiffs that defendant Officers planned to transport plaintiff Zubkovskaya to the hospital.  Before making this decision, defendant Bushnell did not consider "available relevant information about the historical course of the person's mental disorder" to determine whether probable cause existed pursuant to section 5150.05(a).  After plaintiff Zubkovskaya opened the door, defendant Bushnell asked plaintiff Zubkovskaya only one question, even though section 5150.05(a) and (b) required him to consider information from plaintiff Zubkovskaya.  Defendant Bushnell did not, as section 5150.05(a) and (b) required, solicit, listen to, or consider information from plaintiff Carlson about the historical course of plaintiff Zubkovskaya's "mental disorder[,]" including the essential fact that plaintiff Zubkovskaya did not have a "mental disorder" within the meaning of sections 5150 and 5150.05 on February 14, 2020, even though defendant Bushnell was aware that defendant Kresley had been speaking to plaintiff Carlson and even though plaintiff Zubkovskaya handed the telephone to defendant Bushnell before defendant Bushnell announced his decision to transport plaintiff Zubkovskaya to the hospital against her will.  Therefore, defendant Bushnell did not have probable cause pursuant to sections 5150 and 5150.05 to enter plaintiffs' home or take plaintiff Zubkovskaya into custody.

62.   By the time defendant Officers took plaintiff Zubkovskaya into custody, defendant Officers had collected considerable information about the historical course of plaintiff Zubkovskaya's "mental disorder[,]" including information indicating that she did not have a "mental disorder" on February 14, 2020, within the meaning of sections 5150 and 5150.05.  This information revealed, *inter alia,* that Ms. Zubkovskaya was concerned about her reputation and the shame that this incident would cause her "for years."  Plaintiff Carlson advised defendant Kresley that a transport to the hospital against plaintiff Zubkovskaya's will was unnecessary and would harm her, not help her. Defendant officers knew that the 23-minute period while the door was closed and locked provided ample time, opportunity, and provocation for plaintiff Zubkovskaya to harm herself if she had such an intent.  Instead, she continually engaged in conversation with defendant Officers, expressed concern for the shame for "years" that the police presence in her residential community would cause, asked for her husband's presence, and denied any intent to harm herself.  Defendant Officers knew that they did not have probable cause pursuant to sections 5150 and 5150.05 to enter plaintiff's home or to take plaintiff Zubkovskaya into custody or to transport her to a hospital against her will. Defendant Officers did not have probable cause pursuant to sections 5150 and 5150.05 to enter plaintiffs' home or to take plaintiff Zubkovskaya into custody or to transport her to a hospital against her will.

63.   Plaintiff Zubkovskaya did not have on February 14, 2020, and presently does not have, a "mental disorder" within the meaning of sections 5150 and 5150.05.

64.   By telephone to defendant Kresley at 4:12 PM, plaintiff Carlson continued to protest defendant Officers' actions.  At 4:14 PM, defendant Kresley informed defendant Parra that plaintiff Carlson was "objecting" to defendant Officers' actions, in particular the detention pursuant to section 5150.

65.   At 5:20 PM, defendant Bushnell admitted to a medic that defendant Officers "tricked" plaintiff Zubkovskaya into opening the door.

66.   Defendant Officers kept plaintiff Zubkovskaya in handcuffs for 25 minutes.

67.   Defendant Officers repeatedly denied plaintiff Zubkovskaya the water that she requested. After initially providing plaintiff Zubkovskaya three small sips of water, defendant McIntosh dismissed her request for water as an attempt to play "games."  Defendant Officers also denied

1  plaintiff Zubkovskaya's repeated requests to use the toilet, causing physical suffering and
2  humiliation and exacerbating a pre-existing physical condition.

3      68.  Plaintiff Zubkovskaya demanded that defendant Officers leave a note for her mother, a
4  75-year-old woman with heart problems, and expressed concern about her mother's distress if
5  she did not see plaintiff Zubkovskaya in the evening. Persons considering ending their life on
6  that same day are not concerned about the distress that their absence would cause their mother.

7      69.  Defendant Officers transported plaintiff Zubkovskaya to UCSF Medical Center against
8  her will. Several times after defendant Officers took plaintiff Zubkovskaya into custody,
9  plaintiff Zubkovskaya asked for her husband's assistance and expressed concern about the cost
10  of the hospital visit. Plaintiff Zubkovskaya also expressed concern about the cost of the
11  ambulance ride. Persons who are seeking to end their life on that same day do not request
12  assistance from a spouse or express concern about the cost of a hospital visit or ambulance ride.

13     70.  Defendant Officers delivered plaintiff Zubkovskaya to UCSF Medical Center at
14  approximately 5:25 PM. The hospital assigned a doctor to plaintiff Zubkovskaya at 6:03 PM and
15  determined to discharge her at 6:47 PM. In plaintiff Zubkovskaya's medical record, the hospital
16  wrote, "Patient denies actual SI [suicidal intent], feels very traumatized by misunderstanding,
17  and embarrassed and wonders how neighbors interpret her 'arrest' at her house." The hospital
18  observed, "mild skin irritation from cuffs to bilateral wrists." The hospital wrote, "Evaluated
19  and cleared by psychiatry." The hospital also wrote, "No risk factors indicated by the suicide
20  screening tool." The doctor diagnosed plaintiff Zubkovskaya with "sadness." Outside the
21  hospital, defendant McIntosh informed plaintiff Carlson at 5:46 PM that the hospital might let
22  plaintiff Zubkovskaya go "fairly quickly."

23     71.  Outside the hospital, at 5:47 PM, defendant McIntosh informed plaintiff Carlson that
24  "she might not be here very long."

25     72.  At 5:50 PM, defendant McIntosh informed plaintiff Carlson, "Basically, we just needed
26  her to open the door so we could ask her some questions. And she wasn't going with the
27  questions, basically." Defendant McIntosh added, "I think she tried to shut the door on him
28  [defendant Bushnell] again, so that's when he — when he — pushed the door open and came in,
29  because we can't have her go back in the apartment[.]" Plaintiff Carlson asked, "What were the

questions?" Defendant McIntosh responded, "We have to ask certain questions about whether or not she is a danger to herself, a danger to others, if she has medication that she —prescribed — that she is not taking." Plaintiff Carlson asked, "So what did she say in response?" Defendant McIntosh responded, "She wasn't — she was talking over us the whole time. She was kind of talking to us through the door, but she wasn't giving us much to work with."

73.   Defendant Officers failed to follow their training in their response to this incident.

74.   Defendant Officers failed to follow proper and established procedure for responding to a mental health call.

75.   Defendant Officers failed to follow proper and established procedure for evaluating a person's risk for suicide or for causing harm to the person's self.

76.   Defendant Officers failed to follow proper and established procedure for evaluating probable cause to take a person into custody pursuant to section 5150.

77.   Defendant Officers failed to coordinate their activities during the incident and to share material and relevant information among the officers at the scene.

78.   Defendants Domecus, Kresley, McIntosh, Montague, and Parra failed to provide timely and accurate information to defendant Bushnell after defendant Bushnell arrived on the scene and before defendant Bushnell instructed defendant Officers to place handcuffs on plaintiff Zubkovskaya.

## FEDERAL CLAIMS

### First Claim for Relief — Fourth Amendment Illegal Search
### Plaintiffs Carlson and Zubkovskaya v. Defendant Officers

79.   Paragraphs 1 to 78 are incorporated herein.

80.   Plaintiffs had a clearly established right under the Fourth Amendment of the United States Constitution to be secure in their person, home, papers, and effects against unreasonable searches and seizures.

81.   Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be secure in their home from unreasonable search and seizure when, while in the curtilage of plaintiffs' home, they knocked on plaintiffs' door and, when asked to leave, failed to leave. In the alternative, defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be free from unreasonable search and seizure when, while in the curtilage of plaintiffs' home, they knocked at

plaintiffs' door and, when plaintiff Zubkovskaya said that she was not thinking of hurting herself and asked defendant Officers to leave, failed to leave.

82.   Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be secure in their home from unreasonable search and seizure when they entered plaintiffs' home without their consent and without a warrant.

83.   No exigent circumstances existed at the time of defendant Officers' entry into plaintiffs' home or at any time afterward.  In the alternative, if exigent circumstances existed at the time of defendant Officers' entry into plaintiffs' home or at any time afterward, defendant Officers created those exigent circumstances by immediately entering plaintiffs' home after having promised fewer than two minutes earlier not to enter if plaintiff Zubkovskaya opened the door.

84.   Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be secure in their home from unreasonable search and seizure when they entered plaintiffs' home without their consent and without a warrant after defendant Officers engaged in lies, subterfuge, or trickery to induce plaintiffs to open the door when defendant Officers knew that plaintiffs were asserting their Fourth Amendment right by not opening the door and when agreeing to open the door.

85.   Defendant Officers are liable for damages to plaintiffs pursuant to 42 U.S.C. § 1983.

**Second Claim for Relief — Fourth Amendment Illegal Seizure and False Imprisonment**
**Plaintiff Zubkovskaya v. Defendant Officers**

86.   Paragraphs 1 to 78 are incorporated herein.

87.   Plaintiff Zubkovskaya had a clearly established right under the Fourth Amendment of the United States Constitution to be secure in her person against unreasonable seizures.

88.   Defendant Officers violated plaintiff Zubkovskaya's clearly established Fourth Amendment right to be secure in her home from unreasonable seizure and false imprisonment when defendant Officers seized her without probable cause and transported her to the hospital against her will.

89.   No exigent circumstances existed at the time of defendant Officers' seizure of plaintiff Zubkovskaya.  Alternately, if exigent circumstances existed at the time of defendant Officers' seizure of plaintiff Zubkovskaya, defendant Officers created those exigent circumstances by

1    immediately entering plaintiffs' home after having promised fewer than two minutes earlier not to
2    enter if plaintiff Zubkovskaya opened the door.
3        90.   Defendant Officers are liable for damages to plaintiff Zubkovskaya pursuant to 42 U.S.C.
4    § 1983.

5    **Third Claim for Relief — Fourth Amendment Illegal Seizure and Excessive Force**
6    **Plaintiffs Carlson and Zubkovskaya v. Defendant Officers**

7        91.   Paragraphs 1 to 78 are incorporated herein.
8        92.   Plaintiff Zubkovskaya had a clearly established right under the Fourth Amendment of the
9    United States Constitution to be secure in her person, home, papers, and effects against unreasonable
10   seizures.
11       93.   Defendant Officers violated plaintiff Zubkovskaya's clearly established Fourth Amendment
12   right to be secure in her home from unreasonable seizure when defendant Officers used an unreason-
13   able amount of force in circumstances when no force was necessary or justified at the time that
14   defendant Officers used force.
15       94.   No crime was at issue when defendant Officers used force.
16       95.   Plaintiff Zubkovskaya did not pose any threat to the safety of defendant Officers, herself, or
17   anyone else.
18       96.   Plaintiff Zubkovskaya was not actively resisting arrest before or at the time when defendant
19   Officers used force.  In the alternative, without admitting that she resisted in any way, if she initially
20   resisted the use of force to her left arm, she did so without having received any request for
21   compliance or explanation for the use of force, and she correctly exclaimed that the officer had "no
22   right" to use force.
23       97.   Defendant Officers' use of force was unreasonable under the totality of the circumstances.
24       98.   Defendant Officers' use of force violated the SFPD's general orders as described in
25   paragraphs 51–55 and 59–60, *supra*.  Defendant Officers' violation of SFPD's general orders
26   rendered defendant Officers' use of force unreasonable under the totality of the circumstances.
27       99.   All defendant Officers were present, could have prevented a violation of plaintiff
28   Zubkovskaya's clearly established constitutional rights, and failed to do so.

1   100. As supervisory officers, defendants Bushnell and Parra failed to intervene to prevent a

2   violation of plaintiff Zubkovskaya's clearly established constitutional rights and to exercise

3   appropriate command functions.

4   101. Defendant Officers are liable for damages to plaintiff Zubkovskaya pursuant to 42

5   U.S.C. § 1983.

6   **STATE CLAIMS**

7   102. Defendant CCSF is liable for the actions of its employees, and the state claims

8   described *infra,* pursuant to Cal. Gov. Code § 815.2 and the principle of *respondeat superior.*

9   103. On August 10, 2020, plaintiffs mailed a timely claim to defendant CCSF pursuant to

10   Cal. Gov. Code § 911.2.

11   104. Defendant CCSF received plaintiffs' claim on August 12, 2020, and assigned number

12   21-00269 to the claim.

13   105. Defendant CCSF denied plaintiffs' claim on September 14, 2020, and mailed a notice to

14   plaintiffs on September 14, 2020.

15   106. The deadline for plaintiffs to commence this action is March 15, 2021.

16   **Fourth Claim for Relief — Bane Act: Fourth Amendment Illegal Search**
17   **Plaintiffs Carlson and Zubkovskaya v. All Defendants**

18   107. Paragraphs 1 to 78 are incorporated herein.

19   108. Plaintiffs had a clearly established right under the Fourth Amendment of the United

20   States Constitution to be secure in their person, home, papers, and effects against unreasonable

21   searches and seizures.

22   109. Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to

23   be secure in their home from unreasonable search and seizure when, while in the curtilage of

24   plaintiffs' home, they knocked on plaintiffs' door and, when asked to leave, failed to leave.  In

25   the alternative, defendant Officers violated plaintiffs' clearly established Fourth Amendment

26   right to be free from unreasonable search and seizure when, while in the curtilage of plaintiffs'

27   home, they knocked at plaintiffs' door and, when plaintiff Zubkovskaya said that she was not

28   thinking of hurting herself and asked defendant Officers to leave, failed to leave.

110. Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be secure in their home from unreasonable search and seizure when they entered plaintiffs' home without their consent and without a warrant.

111. No exigent circumstances existed at the time of defendant Officers' entry into plaintiffs' home or at any time afterward. In the alternative, if exigent circumstances existed at the time of defendant Officers' entry into plaintiffs' home or at any time afterward, defendant Officers created those exigent circumstances by immediately entering plaintiffs' home after having promised fewer than two minutes earlier not to enter if plaintiff Zubkovskaya opened the door.

112. Defendant Officers violated plaintiffs' clearly established Fourth Amendment right to be secure in their home from unreasonable search and seizure when they entered plaintiffs' home without their consent and without a warrant after defendant Officers engaged in lies, subterfuge, or trickery to induce plaintiffs to open the door when defendant Officers knew that plaintiffs were asserting their Fourth Amendment right by not opening the door and when agreeing to open the door.

113. Defendant Officers interfered with plaintiffs' enjoyment of the exercise of their clearly established Fourth Amendment rights, as described herein, by threat, intimidation, or coercion.

114. Defendants are liable for damages to plaintiffs pursuant to Cal. Civ. Code § 52.1.

**Fifth Claim for Relief — Bane Act: Fourth Amendment Illegal Seizure
  and False Imprisonment
Plaintiff Zubkovskaya v. All Defendants**

115. Paragraphs 1 to 78 are incorporated herein.

116. Plaintiff Zubkovskaya had a clearly established right under the Fourth Amendment of the United States Constitution to be secure in her person against unreasonable seizures.

117. Defendant Officers violated plaintiff Zubkovskaya's clearly established Fourth Amendment right to be secure in her home from unreasonable seizure and false imprisonment when defendant Officers seized her without probable cause and transported her to the hospital against her will.

118. No exigent circumstances existed at the time of defendant Officers' seizure of plaintiff Zubkovskaya. In the alternative, if exigent circumstances existed at the time of defendant Officers' seizure of plaintiff Zubkovskaya, defendant Officers created those exigent circumstances by

immediately entering plaintiffs' home after having promised fewer than two minutes earlier not to enter if plaintiff Zubkovskaya opened the door.

119. Defendants interfered with plaintiff Zubkovskaya's enjoyment of her clearly established Fourth Amendment rights, as described herein, by threat, intimidation, or coercion.

120. Defendants are liable for damages to plaintiff Zubkovskaya pursuant to Cal. Civ. Code § 52.1.

**Sixth Claim for Relief — Bane Act: Fourth Amendment Illegal Seizure and Excessive Force**
**Plaintiff Zubkovskaya v. All Defendants**

121. Paragraphs 1 to 78 are incorporated herein.

122. Plaintiff Zubkovskaya had a clearly established right under the Fourth Amendment of the United States Constitution to be secure in her person, home, papers, and effects against unreasonable seizures.

123. Defendant Officers violated plaintiff Zubkovskaya's clearly established Fourth Amendment right to be secure in her home from unreasonable seizure when defendant Officers used an unreasonable amount of force in circumstances when no force was justified at the time that defendant Officers used force.

124. No crime was at issue when defendant Officers used force.

125. Plaintiff Zubkovskaya did not pose any threat to the safety of defendant Officers, herself, or anyone else.

126. Plaintiff Zubkovskaya was not actively resisting arrest before or at the time when defendant Officers used force. In the alternative, without admitting that she resisted in any way, if she initially resisted the use of force to her left arm, she did so without having received any request for compliance or explanation for the use of force, and she correctly exclaimed that the officer had "no right" to use force.

127. Defendant Officers' use of force was unreasonable under the totality of the circumstances.

128. Defendant Officers' use of force violated the SFPD's general orders as described in paragraphs 51–55 and 59–60, *supra*. Defendant Officers' violation of SFPD's general orders rendered defendant Officers' use of force unreasonable under the totality of the circumstances.

129. All defendant Officers were present, could have prevented a violation of plaintiff Zubkovskaya's clearly established constitutional rights, and failed to do so.

130. As supervisory officers, defendants Bushnell and Parra failed to intervene to prevent a violation of plaintiff Zubkovskaya's clearly established constitutional rights and to exercise appropriate command functions.

131. Defendants interfered with plaintiff Zubkovskaya's enjoyment of her clearly established Fourth Amendment rights, as described herein, by threat, intimidation, or coercion.

132. Defendants are liable for damages to plaintiff Zubkovskaya pursuant to Cal. Civ. Code § 52.1.

**Seventh Claim for Relief — Assault**
**Plaintiff Zubkovskaya v. All Defendants**

133. Paragraphs 1 to 78 are incorporated herein.

134. Defendant Officers acted with intent to cause harmful or offensive contact or threatened to touch plaintiff Zubkovskaya in a harmful or offensive manner.

135. Plaintiff Zubkovskaya reasonably believed she was about to be touched in a harmful or offensive manner.

136. Plaintiff Zubkovskaya did not consent to Defendant Officers' conduct.

137. Defendant Officers harmed plaintiff Zubkovskaya.

138. Defendant Officers' conduct was a substantial factor in causing plaintiff Zubkovskaya's harm.

**Eighth Claim for Relief — Battery**
**Plaintiff Zubkovskaya v. All Defendants**

139. Paragraphs 1 to 78 are incorporated herein.

140. Defendants Bushnell, McIntosh, and Domecus touched plaintiff Zubkovskaya with intent to harm her.

141. Plaintiff Zubkovskaya did not consent to touch from defendants Bushnell, McIntosh, and Domecus.

142. The touching from defendants Bushnell, McIntosh, and Domecus would have offended a reasonable person and did offend plaintiff Zubkovskaya.

143. Defendants Bushnell, McIntosh, and Domecus did not have a privilege because, *inter alia,* the amount of force that they used was not reasonable.

144. Defendants are liable to plaintiff Zubkovskaya for damages for battery.

**Ninth Claim for Relief — False Imprisonment**
**Plaintiff Zubkovskaya v. All Defendants**

145. Paragraphs 1 to 78 are incorporated herein.

146. Defendant Officers intentionally confined plaintiff Zubkovskaya without her consent.

147. Defendant Officers did not have a lawful privilege to confine plaintiff Zubkovskaya.

148. Defendant Officers confined or caused plaintiff Zubkovskaya to be confined for more than three hours.

149. Defendants are liable to plaintiff Zubkovskaya for damages for false imprisonment.

**Tenth Claim for Relief — Negligence**
**Plaintiff Zubkovskaya v. All Defendants**

150. Paragraphs 1 to 78 are incorporated herein.

151. Defendant Officers owed plaintiff Zubkovskaya standard duties of ordinary care, plus heightened duties of care as specially trained police officers, in responding to Ms. McLeod's call to San Francisco police.  This duty encompassed defendant Officers' actions prior to entering plaintiff Zubkovskaya's apartment, while entering plaintiff Zubkovskaya's apartment, while interacting with plaintiff Zubkovskaya in her apartment, and while deciding on the actions to take.

152. Defendant CCSF and Does #1 to #10 owed plaintiffs a legal duty to use due care to hire, train, supervise, and discipline defendant Officers and Does #1 to #10.

153. Defendants breached their legal duty to use due care.

154. Defendants' breach of their legal duty to use due care proximately caused injuries to plaintiffs.

**PRAYER FOR RELIEF**

155. Plaintiff Zubkovskaya suffered physical pain, physical injury, mental anguish, mental pain, emotional distress, humiliation, loss of time, and loss of enjoyment of life from the injury to her foot. Plaintiff Zubkovskaya also incurred medical expenses.

156. Plaintiff Zubkovskaya believes that the stain of a "5150" visit in her medical record has affected her interactions with other doctors since February 14, 2020.

157. Plaintiff Carlson suffered emotional distress and humiliation and nominal damages from the illegal search of his home.

158. Plaintiffs request compensatory, punitive, presumed, nominal, and statutory damages for the injuries described herein.

159. Plaintiffs request reimbursement of litigation costs, expert witness fees, attorney's fees, other reasonable costs allowed by law, and such further relief as the court deems just and proper.

Respectfully submitted,

Dated: March 15, 2021

DOUGLAS F. CARLSON
Plaintiff

Dated: March 15, 2021

MAYA ZUBKOVSKAYA
Plaintiff